UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

             Plaintiff,

    v.

**MITCHELL EDWARD FISHER,**

             Defendant.

_____/

**MAG. JUDGE DAVID R. GRAND**

**No. 23-20191**

**DETENTION HEARING**
**Friday, August 11, 2023**

Appearances:

Diane N. Princ
U.S. Attorney's Office
211 W. Fort Street, #2300
Detroit, Michigan  48226
(313) 226-9100
diane.princ@usdoj.gov
  On behalf of Plaintiff

Nancy L. McGunn
Federal Community Defender
613 Abbott Street, 5th Floor
Detroit, Michigan  48226
(313) 967-5542
nancy_mcgunn@fd.org
  On behalf of Defendant

- - -

*To obtain a certified transcript, contact:*
*Timothy M. Floury, CSR-5780,*
*Official Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard*
*Detroit, Michigan  48226*
*(313)234-2607 · floury@transcriptorders.com*

*Transcript produced using machine shorthand and CAT software.*

*Detention Hearing*
*Friday, August 11, 2023*


**I N D E X**

Motion Hearing                                          Page

Proffer by Ms. Princ  ...........................4

Proffer by Ms. McGunn  .........................12

Argument by Ms. Princ  .........................17

Argument by Ms. McGunn  ........................19

Ruling of the Court ............................24

Certification of Reporter ......................30

-   -   -


**E X H I B I T S**

| Number | Description | Id'd | Rcvd | Vol. |
|--------|-------------|------|------|------|

***None Marked, Offered or Received***

-   -   -


*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

*Page 3*

1          Detroit, Michigan

2          Friday, August 11, 2023

3          1:44 p.m.

4                 -   -   -

5      **THE CLERK:**  Court calls Case No. 23-20191, the United

6  States of America versus Mitchell Fisher.

7      **MS. PRINC:**  Good afternoon, your Honor.  On behalf of

8  the United States, Diane Princ.

9      **THE COURT:**  Good afternoon.

10     **MS. McGUNN:**  And good afternoon, your Honor.  Nancy

11 McGunn from the Federal Defender office representing

12 Mr. Fisher, who's seated to my left.

13     **THE COURT:**  You know, thank you.  Good afternoon.

14     Good afternoon, sir.  If you could give us your name.

15     **THE DEFENDANT:**  Mitchell Edward Fisher.

16     **THE COURT:**  Okay.  Thank you.

17     And I understand that we are here for a detention

18 hearing following the defendant's consent to detention from a

19 number of months ago; is that correct?

20     **MS. PRINC:**  That is correct.

21     **MS. McGUNN:**  That's correct, your Honor.

22     **THE COURT:**  All right.  And I have received the

23 Pretrial Services report, both the initial one and the

24 addendum, which I've reviewed, and I'll be happy to hear any

25 additional factual proffer from each side and then argument

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

*Page 4*

1   from each side.

2         **MS. PRINC:**  Thank you, your Honor.

3         Before I begin, if I may approach to hand Mr. Butts

4   the Government's two exhibits.

5         **THE COURT:**  Okay.

6         **MS. PRINC:**  Which I previously shared with

7   Ms. McGunn.

8         **THE COURT:**  All right.  Thank you.

9         **MS. PRINC:**  Your Honor, before I begin with the

10  factual proffer, I'd first note that because the defendant is

11  charged with transaction of child pornography under 18 United

12  States Code, Section 2252(a), Subsection (a)(2) there is a

13  rebuttable presumption in this case.

14        I tender the following facts:  This case began in

15  February of 2023.  The defendant at that time was employed at

16  Ford Motor Company.  Ford Motor Company received an anonymous

17  tip that this defendant was possessing child pornography on his

18  work devices.  Ford Motor did an internal investigation and

19  very quickly verified they found files containing what I'll

20  refer to as child sexual abuse material or CSAM.  After they

21  discovered that material, they alerted authorities, which in

22  this case was the FBI and a Michigan State Police detective who

23  was operating as a task force officer with the FBI.

24        After some investigation, in March of 2023, agents

25  executed a search warrant at this defendant's house.  It was a

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

*Page 5*

1    federal search warrant issued by a judge of this court.

2              At the time, no one was present inside of the

3    residence, and as they were conducting the search warrant, a

4    neighbor who observed them, approached them.  To protect

5    people's identities, I'll just refer to this as the neighbor.

6              **THE COURT:**  Okay.

7              **MS. PRINC:**  The neighbor identified himself as the

8    defendant's friend.  The agents identified themselves by the

9    name and the specific task force they were assigned to, which

10   would be SEMTEC.  It's the Southeast Michigan Child

11   Exploitation Crimes Task Force.

12             The initial tip had involved a video with a -- what

13   appeared to be an eight-year-old girl.  And because the agents

14   were unable to identify the girl at that time, they had some

15   concerns that this was a victim who was known to this defendant

16   and to whom the defendant may have access.  So as part of their

17   investigation when this neighbor approached, the agent showed a

18   sanitized still image of this girl.  The neighbor said that it

19   looked like it could be another neighbor child, and for

20   purposes, again, of protecting the identities, I'm going to use

21   a name that is not the child's name but it's relevant to my

22   argument before your Honor.  So he said something -- I'm going

23   to use the name Jane.  That's not her actual name, but he said

24   it looks like it could be Jane, and then the neighbor left the

25   scene.  The agent had given him his card.

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

*Page 6*

1       The neighbor called back and said that he had spent

2   some time thinking about it and he was concerned because he had

3   previously spoken with this defendant and this defendant had

4   told him, if you ever see the police at my house or some kind

5   of thing going down at my house, you need to get my white

6   laptop for me and you need to check a secret compartment that

7   is in my dresser in my bedroom.

8       Now, up until that point during the execution of the

9   first search warrant, agents had recovered a white laptop as

10  well as other devices, but based on this new information,

11  agents, who had finished their search, obtained a second search

12  warrant.  Later that same day they re-entered the residence and

13  collected some other devices, including a GPS that contained a

14  SIM card with data inside of it.

15      Meanwhile, the agents had also spoken to the parents

16  of the child I'll refer to as Jane.  They showed them the same

17  photo.  The parents said that it looked like it could be their

18  daughter.

19      I'll fast forward a little bit.  For the record, this

20  is not the neighborhood girl.  It's a unidentified other victim

21  who was involved in a CSAM video that was not produced by this

22  defendant.  But subsequent review of his devices and other

23  electronic files, including a Google drop -- excuse me --

24  Google Drive account, indicated that this defendant had renamed

25  the specific file involving that girl to the name of his

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

Page 7

1  neighbor girl.  So, for example, he had saved it as "Jane" on

2  his files.  And the parents had also indicated that prior to

3  this incident, off and on about a year before, this defendant

4  had baby-sat Jane and her little brother for about an hour

5  after school before they would get home from work.

6         During the execution of the second search warrant,

7  the agents did find the secret compartment that the neighbor

8  had described.  Now, they didn't find anything inside of it,

9  but just for the record, Government's Exhibit 1 before your

10  Honor is a close-up of that compartment, and then Government's

11  Exhibit 2 is the -- what it was was a built-in dresser into the

12  wall, and there was a section that had space in between where

13  you see the wall with the photographs in Government's Exhibit 1

14  and the actual wall, such that things could be concealed there.

15  Now, they didn't locate anything, but they did find that

16  compartment that the neighbor had described.

17         I already mentioned the file involving the neighbor

18  girl's name.  In addition to that file, to date, agents have

19  found over $3,500 files involving CSAM.  It's mostly images,

20  but there are a handful of videos that involves children as

21  young as toddlers being sexually abused.  It also involves

22  depictions of bestiality involving dogs and children.  And just

23  for the record, this defendant owned a dog, himself.

24         In addition to the 3,500 CSAM images, there is 1,200

25  files of child erotica or child exploitation material that

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

*Page 8*

1  skirts the line but does'not meet the federal definition of

2  child pornography.  And then the defendant was subsequently

3  charged and indicted in this case.

4  There was also a Apple drive account, but that is

5  still encrypted and agents are still attempting to go into that

6  return.

7  With respect to this defendant's history and

8  characteristics, the Pretrial Services report does note that he

9  has a prior 2014 domestic violence incident that was dismissed,

10  but the defendant -- it was a misdemeanor domestic violence

11  assault.  The defendant was sentenced to probation and I

12  believe 30 days' custody.  That's in the initial report.

13  **THE COURT:**  When you say "dismissed," he was

14  convicted and sentenced, but then it was, what, expunged?

15  **MS. PRINC:**  It says "suppressed incident."  I don't

16  know if the correct term here is expungement, but it seems at

17  least it came to an expungement after he --

18  **THE COURT:**  All right.

19  **MS. PRINC:**  -- was convicted and sentenced.

20  I also note another domestic violence incident

21  involving -- and this is relevant because the release plan

22  involves this defendant's fiancee.  There is a prior domestic

23  violence incident involving the two of them in which this

24  defendant was the victim.  In November of 2022, police were

25  called to this defendant's Commerce Township home after he

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

*Page 9*

1    called 911 and said that he and his fiancee, his girlfriend,

2    had been having a fight and that he was having to barricade

3    himself in a room to get away from her.

4           Now, he was not -- when officers arrived, he was not

5    completely cooperative, as these -- often we see in these

6    cases.  He did indicate, through his actions, that she had hit

7    him, but he would not show the responding officers his injuries

8    and would not be photographed.

9           At the time of this defendant's arrest in this case,

10   FBI agents interviewed his girlfriend.  He was found not at his

11   residence but he was about to board a flight to Florida.  It

12   doesn't -- there's no indication that he was fleeing, just it

13   was a coincidence that he had been traveling to Florida that

14   day.  And his girlfriend was with him and was interviewed, and

15   she informed agents that at the time of the November 2022

16   incident, she had located child pornography on his devices and

17   became so upset that she attacked him over it, and that was her

18   explanation for that incident.

19          Finally, I note with respect to the Pretrial Services

20   report that the release plan involves this defendant living in

21   a house where children have visited in the past.

22          **THE COURT:**  When was that incident of domestic

23   violence that was due to the child pornography that was in --

24   what month in 2022?

25          **MS. PRINC:**  November.

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

*Page 10*

1        **THE COURT:**  Okay.

2        **MS. PRINC:**  So I believe the plan involves the

3    defendant and his girlfriend, or fiancee, living with his aunt

4    and uncle, and the Pretrial Services report does note that the

5    aunt and uncle have grandchildren that come to visit.  So

6    that's noted there.

7        And then I also note that it says that the aunt and

8    the uncle will not be present in the house for a planned trip

9    from September 12th through September 24th.

10       That concludes my factual presentation.  I can

11   proceed directly to argument if your Honor would like.

12       **THE COURT:**  No, I'd like to hear facts from the

13   defense.  I just want to take a five-minute break, though, in

14   between.  So we'll just adjourn for five minutes and I'll be

15   back.

16       All right.  Thank you.

17       **THE CLERK:**  All rise.

18       Court is in recess.

19       You can be seated.

20      (Recess at 1:56 p.m. until 2:00 p.m.)

21       **THE CLERK:**  All rise.

22       Court is again in session.  Judge David R. Grand

23   presiding.

24       You may be seated.

25       Court recalls Case No. 23-20191, the United States of

*23-20191; U.S.A. v. Mitchell Edward Fisher*

1  America versus Mitchell Fisher.

2        **MS. PRINC:**  Your Honor, there's --

3        **THE COURT:**  Oh, wait.  Wait.

4        **MS. PRINC:**  I'm sorry.

5        **THE COURT:**  Sorry.  I was quicker than I thought.  No

6  problem.

7        Ms. McGunn, are you ready?

8        **MS. McGUNN:**  I am, your Honor.  Nancy McGunn on

9  behalf of Mr. Fisher.

10        **THE COURT:**  Okay.

11        **MS. PRINC:**  And, your Honor, I apologize.  Do you

12  want me to wait for --

13        **THE COURT:**  No, Eddrey, he had recalled it, but we --

14  Ms. McGunn was just coming in.  We didn't -- hadn't said

15  anything, so go ahead.

16        **MS. PRINC:**  There was one more factual point I forgot

17  to make.

18        **THE COURT:**  Okay.

19        **MS. PRINC:**  I'd mentioned that when they went back in

20  a second time and collected a GPS device, inside of the SIM

21  card, they did locate one file that was an approximately

22  four-minute video from a camera that appeared to have been set

23  up in a bathroom inside of Mr. Fisher's residence.  The video

24  depicts -- it has a created date of November of 2017, and it

25  appears to depict an unidentified adult woman just briefly

1   stepping in and out, but the view of the camera is on the

2   shower.  And that, to date, is the -- what's been recovered

3   from that SIM card.

4        **THE COURT:**  All right.  I did have one question for

5   the Government, factually, which is, the Pretrial Services

6   report, the addendum references not having certain information

7   at the time of the initial report and then having, therefore,

8   created the addendum, but it didn't specify what that

9   information was that had not been known, and I'm just wondering

10  if -- I just wanted to make sure that I had a complete record,

11  because I'm just not sure what that was referring to.

12       **MS. PRINC:**  I believe Ms. Lanzon from Pretrial

13  Services is here.  I did speak with Gwendolyn Stein earlier in

14  the week and confirmed the details that I was going to present

15  today.

16       There may be some misunderstanding, because at the

17  time of the detention hearing, my colleague, Doug Salzenstein,

18  was going to argue, and I think he spoke with Ms. Stein about

19  what he was planning to present, but at this point, our

20  investigation is complete, and those are the facts I'm

21  presenting to the Court.

22       **THE COURT:**  Okay.  That's fine.  Then we can just

23  move forward to the defense factual proffer, and then, as I

24  said, I'll give each side an opportunity to present argument.

25       **MS. McGUNN:**  Thank you.

*23-20191; U.S.A. v. Mitchell Edward Fisher*

1    Your Honor, just in terms of a proffer, obviously,
2    optimally, Pretrial Services report, both the initial and the
3    addendum, went out to the Court that Mr. Fisher's girlfriend,
4    Ms. Gibson, Miranda Gibson, is in the courtroom.  Ms. Gibson is
5    pregnant and due September 16th, which is what prompted this
6    request in front of us today.  Also present in the courtroom is
7    Mr. Fisher's aunt, Mary Jenrich (phonetic).  I had provided her
8    information to Pretrial Services at the beginning of the week.
9    She is willing to allow Mr. Fisher, as well as Ms. Gibson and
10   the baby, to reside there for the month of September.

11   I just want to address by way of proffer -- this
12   always gets a little confusing because I do want to respond to
13   the Government's proffer, and in that sense kind of offer my
14   own facts as related to what they've already brought up, but
15   staying away from arguments.

16   Your Honor, I -- going back five months -- right? --
17   Mr. Fisher consented to detention on that day because, in large
18   part there was a lot -- that's a lot of information that just
19   had come about.  Well, now five months later we have a
20   different way of viewing that information, and so to address
21   first this idea of a hidden compartment, I want to point out --
22   and I believe the Court's able to see this -- the previous
23   owner of this home made a built-in cabinet, and in making a
24   built-in cabinet in the bedroom, there was dead space behind
25   it.  This, I don't -- if you were to remove this panel, you

*Detention Hearing*
*Friday, August 11, 2023*

Page 14

1   would just see an open space behind it that certainly things

2   could be stored in.  Nothing was stored in that space when law

3   enforcement officers approached.  And Mr. Fisher denies ever

4   telling the neighbor to go and search it in the event the

5   police would respond -- were to respond to his home.  The

6   neighbor was absolutely aware of that compartment.  Mr. Fisher

7   had shown him, himself.  It was kind of a joke that the

8   previous owner had done all these built-ins around the house.

9          With respect to Mr. Fisher's criminal history, the

10   Government pointed out the 2014 misdemeanor domestic violence

11   incident.  Mr. Fisher denies ever being sentenced or serving 30

12   days in jail, and from Pretrial Services' write-up, I can't

13   even tell if this was actually a guilty plea versus some other

14   diversionary disposition, but I would note that it was back in

15   January of 2014 and there was no -- no criminal history issues

16   since then.

17          With respect to the incident with Ms. Gibson that

18   took place in November of 2022, I would indicate that both

19   Ms. Gibson and Mr. Fisher were extremely intoxicated.  They

20   were at home at the time.  They were legally permitted to drink

21   within their own home.  They weren't doing anything like

22   operating motor vehicles.  As a result of that incident,

23   Ms. Gibson was cited for disorderly person and placed on

24   probation.  She's already filed a motion to -- for early

25   termination of that probation, but that was the outcome of that

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

Page 15

1    incident.

2            With respect to the release plan and the idea that

3    there are children that would be in the home, I've spoken with

4    Mr. Fisher's aunt.  During that month, children would not be in

5    the home.  We have a very simple and straightforward proposal,

6    and part of that would be that there would not be minor

7    children in that home.  His aunt is more than willing to visit

8    her grandchildren within their own homes during that 30-day

9    period.

10            Lastly, with respect to the SIM card -- the

11   Government did indicate this -- the date of that file is 2017,

12   and in the five months since that item was found, there is

13   absolutely nothing to indicate that Mr. Fisher in any way,

14   shape or form used a hidden camera -- used anything to capture

15   images of anyone, other than that 2017 file in a bathroom, that

16   I believe the Government also has images of, is in the process

17   of being renovated, so I just want to clarify that fact as

18   well.

19            And beyond that, your Honor, we're prepared to go to

20   argument.

21            **THE COURT:**  One question I have is that in the

22   initial Pretrial Services report it indicates -- I'm reading

23   here -- Ms. Gibson is not willing to assist with monetary bond

24   or act as a third-party custodian for the defendant.

25            So what -- what's changed now?

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

*Page 16*

1      **MS. McGUNN:**  So, your Honor, this is an extremely

2    complicated situation.  Mr. Fisher and Ms. Gibson have been

3    together for several years.  She is currently pregnant and due

4    mid-September.  This is a highly emotionally-charged situation.

5    These charges are very serious.  Mr. Fisher amply recognizes

6    that.  That's why he consented to detention.  I believe that

7    Ms. Gibson and Mr. Fisher are doing their best to navigate

8    through this time, particularly the point at which she is due

9    to give birth to their child.  So Ms. Gibson is here to

10   explain.  She, frankly, is the person that drew up this release

11   plan.  Her desire is to have her partner with her in the

12   delivery room knowing that he will then return to custody

13   voluntarily, but she is willing to -- she's come up with this

14   plan.

15           So the monetary bond, I don't know, that was never an

16   issue.  I believe that at the time she had extremely

17   understandably strong feelings about the allegations.

18           **THE COURT:**  All right.

19           **MS. McGUNN:**  And also I would say much was unknown at

20   that time.  We're getting an influx of information from a

21   second search warrant that had just been executed, so a lot was

22   unknown on that day.

23           **THE COURT:**  All right.  Anything else factually --

24           **MS. McGUNN:**  No.

25           **THE COURT:**  -- before I give each side an opportunity

*23-20191; U.S.A. v. Mitchell Edward Fisher*

1    to argue?

2              **MS. McGUNN:**  No.

3              **THE COURT:**  All right.  You can go ahead.

4              **MS. PRINC:**  Your Honor, with respect to the 3142(g)

5    factors, I note that just on the charges, alone, this is a

6    serious case, and I acknowledge that the defendant acknowledges

7    that, himself.  This defendant possessed and transported CSAM.

8    His devices so far have -- we've located thousands of files

9    involving sexual abuse of children as young as toddlers.  As I

10   mentioned, it includes depictions of bestiality involving

11   children.  There's also a number -- so those are the charges,

12   alone, and they carry a rebuttable presumption.

13             There are also a very -- a number of very concerning

14   and alarming circumstances regarding this offense.  The

15   defendant renamed a CSAM file to the name of a neighborhood

16   girl who he had baby-sat in the past, and whom her own parents

17   said that the girl in the actual file looked so much like their

18   daughter that they thought it could be her.  The charges are

19   what they are at this point --

20             **THE COURT:**  I know you're not going to -- I'm not

21   asking you to give the name, but was it a unique name in such a

22   way that the naming of the file would suggest it was named

23   after the neighborhood child or -- you know, it's hard --

24             **MS. PRINC:**  If your Honor would like, I can give you

25   the name at a sidebar.

*Detention Hearing*
*Friday, August 11, 2023*

Page 18

1          **THE COURT:**  Counsel, do you want to approach?  Is

2     that agreeable?

3          **MS. McGUNN:**  Yes.

4          (At sidebar off the record.)

5          **THE COURT:**  All right.  Thank you.

6          All right.  Thank you.  You can go ahead.

7          **MS. PRINC:**  And, so, common sense -- what I wanted to

8     say was that common sense indicates that this is a combination

9     of alarming circumstances.  A defendant with an overriding

10    interest in the sexual abuse of children, exposure and access

11    to a neighborhood child, whom he baby-sat and who bore a

12    striking resemblance to the video that has been found on his

13    devices, that, once again, he renamed to her name.  This is a

14    defendant, also, who at least at one point in his life had a

15    camera set up in a bathroom to record people secretly, and

16    secret compartments that he, according to the neighbor, told

17    him, if anyone ever comes to my house to collect items, that's

18    where -- go get stuff from those -- excuse me -- compartments.

19          He also -- that same neighbor was also able to

20    identify the white laptop in this case.

21          I also note that there's a break in time between

22    November of 2022 when his girlfriend made the discovery that

23    she told FBI agents about on his devices and the recovery of

24    materials in this case in March of 2023, and so there's ample

25    time in that space for this defendant to have cleaned up

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

*Page 19*

1  whatever he had, and I submit, your Honor, what we have here is

2  just the tip of the iceberg.  But the one through line through

3  all of that is that this defendant kept this file of this girl

4  who bore a resemblance to the neighborhood child.

5          So based on the nature and circumstances of the

6  offense and the very alarming circumstances surrounding the

7  offense, those factors weigh heavily in favor of detention.

8          With respect to the defendant's history and

9  characteristics, I note both his domestic violence incident and

10  his girlfriend, the birth of a child and the weeks following

11  that are some of the most stressful days in any parent's life.

12          I understand that the defendant wants to be present

13  for the birth of his child, but speaking from my own

14  experiences, those days are very stressful, indeed, and these

15  two people have a prior domestic violence incident.  He has a

16  separate domestic violence incident.  I have great concern

17  about releasing this defendant to those circumstances and

18  having these two together, especially with a newborn infant

19  present.

20          For all of these reasons, the Government is seeking

21  detention in this case, is opposing this temporary release

22  plan.

23          **THE COURT:**  All right.  Thank you.

24          Okay.  Ms. McGunn, you can go ahead.

25          **MS. McGUNN:**  Thank you, your Honor.

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

*Page 20*

1    I do want to address, obviously, the circumstances

2  outlined in the indictment, but I first want to turn to

3  Mr. Fisher's history and characteristics as a person.

4    Much of this is set forth in the Pretrial Services

5  report, but I think it bears noting.  Mr. Fisher was born and

6  raised in the Traverse City area.  He graduated from high

7  school in 2004.  He began at community college in Traverse City

8  and eventually transferred to Central.  He worked full-time

9  throughout college.  He paid for his own college education.  At

10 the time of his arrest, he had been with Ford as a materials

11 engineer since 2016.  Prior to that, he had been employed as

12 well.

13    He owned the home that was the subject of the search

14 warrants.  He purchased it in 2017 and had resided there off

15 and on with Ms. Gibson.

16    In terms of his criminal history, from what the Court

17 can see from the Pretrial Services report, it really amounts to

18 driving offenses that were remote in time, as well as that one

19 misdemeanor domestic violence charge.  We, again, have no

20 indication of a plea in that matter, nor do we know the

21 circumstances.

22    He certainly has no history of failing to appear or

23 anything else that would suggest to the Court that Mr. Fisher

24 is not -- is unlikely to come back to turn himself in on the

25 30th.

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

*Page 21*

1       Again, with respect to the incident with Ms. Gibson,
2   both were intoxicated, both were at home at the time and it
3   resulted simply in a disorderly conduct charge.

4       Mr. Fisher does have a history of ADHD.  He's been
5   under the care of a doctor continuously from the time he was 19
6   on.  He also has a history of engaging in mental health
7   treatment.  While at the Sanilac County Jail, he has been able
8   to have some telephone sessions and would continue that once
9   he -- if he were to be released during that one-month period.

10       He has a number of ties to the community, obviously
11   the past employment, the home, Ms. Gibson and his aunt, who is
12   present in the courtroom as well.

13       I do want to point out to the Court, and I should
14   have pointed this out at the beginning, Mr. Fisher was actually
15   assaulted at the Sanilac County Jail two days ago.  His nose
16   was broken.  He, as the Court can see, has two black eyes.  He
17   was transported to the hospital, given a CAT scan, which was
18   clear, but has to follow up with medical personnel.

19       So these past five months in jail have not been
20   particularly easy, but Mr. Fisher wanted to consent to custody
21   because he wanted to return home to his child as soon as
22   possible.  Mr. Fisher's intent from the beginning has been to
23   enter a guilt plea in this case, and that is still the plan.
24   He is asking simply to be out of custody for 30 days to attend
25   the birth of his child.

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

*Page 22*

1      With respect to the plan that's in place, this was

2  provided to Pretrial Services.  His aunt and uncle have

3  generously offered up their home.  All of the items that the

4  baby would need are within the home.  Ms. Gibson, there's a

5  whole plan in place for the delivery.  The aunt and uncle's

6  home is right in between the doctor's office and the hospital

7  where she is set to deliver, so it is tight and clean and well

8  organized.  We are asking that Mr. Fisher would be on a tether

9  during that time and only be at the home, the hospital or the

10  doctor's appointments, and that's it.

11      I want to turn, your Honor, to this offense, which at

12  this point Mr. Fisher is, without question, charged with two

13  very serious counts, possession, which does not carry a

14  mandatory minimum, and transportation, which has a mandatory

15  minimum of five years.

16      I would point out that the transportation that's

17  alleged to have occurred is uploading a video to a Google

18  Drive, so it's not what we tend to think of in terms of

19  transportation, which is an individual deliberately moving an

20  item across state lines, internationally, et cetera.

21      There is not now, certainly -- and even on the first

22  day we were in court, it was -- spirts were high, a second

23  search warrant had just been executed, and I think it's very

24  important to address what is absent in this case.  There is no

25  indication that Mr. Fisher has ever been alleged to have

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

Page 23

1  produced child pornography in any way.  There is no indication

2  that he has traded images.  There is no indication that he is

3  engaged in chats with other interested parties.  There is no

4  indication that he has ever reached out to a child or an adult

5  to solicit images.

6        I understand the Government's concern about that file

7  being renamed, and the name Jane is the name that we would use

8  as well, but I think that the explanation that needs to be

9  considered is that if an individual were viewing items that are

10 illegal in nature and are not supposed to be viewing and are

11 aware of that and comes across an image of someone who appears

12 so strikingly similar to someone that they know already, so

13 similar, in fact, that this child's own parents initially

14 identify her as the subject of that video, that is an issue

15 that causes significant concern and confusion and a person

16 might not know exactly what to do with that information.  This

17 is not a situation that was accompanied by any other images of

18 this child or anything that indicates that Mr. Fisher had any

19 interest in this child whatsoever, nor is this a situation

20 where images were reorganized and named to suggest that there

21 was some additional level of scrutiny that was being applied to

22 what was found at the home.

23       We are not trying to suggest that these allegations

24 aren't serious.  Of course they are, but they exist on the

25 spectrum of these types of offenses, and because what we are

*23-20191; U.S.A. v. Mitchell Edward Fisher*

1    very simply seeking is release for a 30-day period so that he

2    can attend the birth of his child.  He is more than willing, as

3    gut-wrenching as that would be, to return to jail at that point

4    because he believes it's what's best, both for Ms. Gibson and

5    the child.

6            Your Honor, for those reasons, we are asking for

7    release from September 1st to September 30th on a GPS tether

8    with the agreement that he would reside at the home of his aunt

9    and uncle.

10           **THE COURT:**  All right.  Thank you.

11           Well, in this matter, which is -- it's difficult and

12   it's concerning and it's sad, but the Court is governed by the

13   Bail Reform Act factors, and the first factor is the nature and

14   circumstances of the offense charged.  This is also a

15   presumption case, which means that the Court, absent -- well,

16   it just means that there's a presumption that because of the

17   nature of the charges here, that what should take place is that

18   the defendant's detention.  And the defendant has an

19   opportunity to rebut that presumption.  And even if the

20   defendant does rebut that presumption, it's still something the

21   Court can consider.  But this situation that faces -- that the

22   Court's confronting here today is kind of different because of

23   the fact that the defendant has already been -- has already

24   consented to detention a number of months ago and is now asking

25   for release for a period of time only, which is, it's just a

1    unique situation.  But it's also troubling because the reason

2    he's asking to be released is so that he can attend and be part

3    of the birth of a child when the crime here involves child

4    abuse.  So it's not like he had been charged with a drug charge

5    and now wants to be with the child or he had been charged with,

6    I don't know, some other kind of charge and now wants to be

7    with a child.  When you're charged with crimes that involve

8    sexual abuse of children and then say, well, I want to be

9    released to be with a child, it just -- it just raises some

10   questions, and so I'm just kind of giving you, candidly, what's

11   on my mind in terms of, you know, the thought process, but it's

12   kind of all just in the background.  I still am governed by the

13   Bail Reform Act factors.

14          But the first factor is the nature and circumstances

15   of the offense charged.  Here, I think the -- first of all, the

16   statute speaks specifically of crimes involving minor victims,

17   which, obviously, this is, but the circumstances are everything

18   else that's involved.  And I agree with Ms. McGunn what you're

19   saying about the kind of spectrum and, you know, certainly

20   there are worse cases that the Court has seen, but there is

21   also some factors and circumstances of this particular charge

22   that are alarming.  Number one, the size of the volume of the

23   materials that are involved is fairly large.  Number two, the

24   naming of the file to the neighbor's name is, I think, a

25   significant consideration because it shows some sort of, like,

1  fantasy in the defendant's mind that he can't, I don't know,

2  get over, and, you know, that's alarming, I think.  There's the

3  situation with the -- with the neighbor I view as part of

4  circumstances where he had made a -- and I know it's disputed,

5  but the fact that the neighbor would contact the -- the

6  officers, who had completed their search already and contact

7  them, and on his own mention a white laptop, which turned out

8  to be correct, and the compartment, which also turned out to be

9  correct.  That just seems that -- that is just another

10  circumstance that is suggestive of the defendant knowing that

11  this was wrong and that he didn't want to be caught.  And so I

12  think all of these, the nature and circumstances of the offense

13  charged weigh very heavily in favor of detention.

14         The second factor is the weight of the evidence, and

15  that's not the weight of the evidence of the defendant's guilt

16  or innocence, but the weight of the evidence of him being a

17  danger.  And the third factor, which in this case I think kind

18  of dovetails, is the history and characteristics of the

19  defendant.  And I'm just, like I said, really troubled by this

20  kind of short-term release plan during what will be a very

21  stressful time for anyone who's had children.  You know, it's

22  extremely stressful.  You're sleep deprived.  The whole

23  birthing process, things can happen, things can go wrong.  And

24  I don't know what his situation has been in prison recently.  I

25  do see the defendant here with, unfortunately, having recently

1    been assaulted, which should not take place.  That's not

2    appropriate and we need to think about having him at a

3    different location.  That's something, certainly, we can

4    consider.  But I just really don't understand the -- the --

5    Ms. Gibson's kind of change while he's been incarcerated.  I

6    mean, she went from when he -- well, first, when she found out

7    about this material to getting into a domestic violence

8    situation with him, and then he continued, didn't get rid of

9    the material, and now he's been in custody for months and

10   now -- and she was unwilling to be a third-party custodian and

11   now is, but only for a temporary period of time, and it just is

12   really giving me great concern about how this period of time is

13   going to go, how it would be managed, how the stresses of the

14   situation would be managed, how the defendant would manage as

15   he's coming up on his date to return.  And it also returns me

16   to the kind of overarching point that this is -- these are

17   images that he is compiling and saving of young children in,

18   you know, being sexually abused, and so then to say, well, I

19   want to be out so I can be part of the birthing process of my

20   child.  And I'm not saying -- I'm not saying that it is not

21   genuine, but I also think it's not fair to ask the Court to not

22   recognize that kind of connection and the, I don't know, just

23   kind of how incongruous that seems to have these charges about

24   child sexually-abusive material and then be released to be part

25   of a child birth, and to only be returned, you know,

*Detention Hearing*
*Friday, August 11, 2023*

*Page 28*

1    immediately to prison, so -- or to jail, I should say.

2            And so I just am not seeing a situation that I think

3    is going to be positive for everyone.  I think it's just going

4    to be extremely stressful, and especially with the prior

5    domestic violence.  And so I just have those concerns.  And so

6    I think for those reasons, while I do say that it's very sad

7    and it's very hard in terms of having the child being born and

8    he's not going to be there, at least at this point, but that's

9    just how I see the factors and the concerns.

10           And so for that reason, I will deny the defendant's

11   motion to be released on this temporary bond.

12           I'll issue a written decision explaining the

13   circumstances, and if there -- the defendant wishes to appeal,

14   that's certainly his right to do so, and I appreciate both

15   sides' arguments.

16           **MS. McGUNN:**  Your Honor, could I just make several

17   points just because the Court's issuing a written order and I

18   don't want to leave the record --

19           **THE COURT:**  Okay.

20           **MS. McGUNN:**  -- with any confusion, and I believe the

21   Government would actually agree with the points I'm making,

22   possibly.

23           First, the -- what the Pretrial Services report said

24   was that Ms. Gibson was unwilling to post bond or be

25   third-party custodian.  In fact, on that day, Ms. Gibson showed

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

Page 29

1    up in support of Mr. Fisher, and we were going to seek a bond

2    that day, just so the Court is clear, and Ms. Gibson was

3    pregnant at the time.  So we would have been in this situation

4    and we have -- if that makes sense to the Court.  The only

5    reason we did not do that is because of the specter of these

6    looming changes was raised, and now none of those things have

7    come to fruition.  And what I mean by that is, again, there's

8    no production, et cetera.

9            The Court said something about Mr. Fisher compiling

10   and saving these images, and I do want to point out that, at

11   least according to the Government, much of these images were

12   actually located in a cached area on the computer, which means

13   they weren't saved, they weren't deliberately preserved in one

14   item -- one area or another.  They were there having previously

15   been on the device.  And to the extent the Court's issuing an

16   order, I just want that to be clear.

17           And, your Honor, the last -- and that's all.  That's

18   all I have.

19           **THE COURT:**  All right.  Thank you.

20           Well, as I said, I'll get that written ruling out

21   either later today or certainly tomorrow.

22           And if you'd like to appeal, Mr. Fisher, it's

23   certainly your right to do so.  Obviously Ms. McGunn is working

24   hard to try to advocate for you, and if there's an appeal, you

25   know, I know the district judge would consider it promptly.

*23-20191; U.S.A. v. Mitchell Edward Fisher*

*Detention Hearing*
*Friday, August 11, 2023*

Page 30

1          All right.  Anything else?

2              **MS. PRINC:**  No.  Thank you, your Honor.

3              **MS. McGUNN:**  No.  Thank you.

4              **THE COURT:**  All right.  Thank you.

5                              -   -   -

6                  **C E R T I F I C A T I O N**

7          I certify that the foregoing is a correct

8      transcription of the record of proceedings in the

9      above-entitled matter.

10

11     <u>s/ Timothy M. Floury, CSR-5780</u>          10/19/2023
       Timothy M. Floury, CSR-5780             Date
12     Official Court Reporter

13                              -   -   -

14

15

16

17

18

19

20

21

22

23

24

25

                    *23-20191; U.S.A. v. Mitchell Edward Fisher*